IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert B. Jordan, | ) | C/A No.: 4:23-2520-SAL |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| Horry Electric Cooperative, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the court for review of the November 25, 2024 Report and Recommendation of United States Magistrate Judge Kaymani D. West (the "Report"), made in accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.). ECF No. 34. For the reasons below, the court adopts the Report in full.

BACKGROUND AND PROCEDURAL HISTORY

This action was brought by Robert B. Jordan ("Jordan" or "Plaintiff") against his former employer Horry Electric Cooperative ("Defendant"). Jordan is a white male who has submitted evidence he has been "called dark skinned, olive skinned" and worked as a fleet manager. The specific facts are fully set forth in the Report, and the court will not repeat them here.

Jordan filed this case, which was removed to this court on June 7, 2023, asserting claims for hostile work environment and constructive discharge based on race, color, and sex in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e *et seq.* On March 21, 2024, Defendant moved for summary judgment. ECF No. 19. Plaintiff filed his opposition on May 6, 2024. ECF No. 25. The magistrate judge issued the Report on November 25, 2024. ECF No. 34. On December 23, 2024, Plaintiff objected to the Report, ECF No. 37, and on January 10, 2025, Defendant filed its reply. ECF No. 40. The matter is now ripe for review by this court.

REVIEW OF A MAGISTRATE JUDGE'S REPORT

The magistrate judge makes only a recommendation to this court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with this court. *See Mathews v. Weber*, 423 U.S. 261, 270–71 (1976). In response to a recommendation, any party may serve and file written objections. *Elijah v. Dunbar*, 66 F.4th 454, 459 (4th Cir. 2023) (citing 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b)(3)). The district court then makes a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. *Id.* To trigger de novo review, an objecting party must object with sufficient specificity to reasonably alert the district court of the true ground for the objection. *Id.* (quoting *United States v. Midgette*, 478 F.3d 616, 622 (4th Cir. 2007)). If a litigant objects only generally, the court need not explain adopting the Report and must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (citing Fed. R. Civ. P. 72 advisory committee's note).

An objection is specific so long as it alerts the district court that the litigant believes the magistrate judge erred in recommending dismissal of that claim. *Elijah*, 66 F.4th at 460. Objections need not be novel to be sufficiently specific. *Id.* Thus, "[a]n the absence of specific objections . . . this court is not required to give any explanation for adopting the recommendation." *Field v. McMaster*, 663 F. Supp. 2d 449, 451–52 (4th Cir. 2009).

DISCUSSION

Jordan does not object to the dismissal of his claims for hostile work environment based on sex or for constructive discharge. Thus, the court adopts the magistrate judge's recommendation that Defendant's motions for summary judgment be granted as to these claims.

Jordan filed only one objection, arguing that the Report erred in applying the relevant factors to determine whether a severe and pervasive hostile work environment existed concerning his Title VII race and color discrimination claims. ECF No. 37 at 2. Specifically, Jordan objects that the Report "focused on Plaintiff's continued employment from August 2020 to December 2021 after his complaints and concluded that his continued employment 'indicates the work conditions were not impacted in a way that made the environment severe or pervasive from a race/color-based perspective' and that Plaintiff did not meet the burden of a severe or pervasive hostile work environment." *Id.* (citing ECF No. 34 at 25–26). Jordan also argues that, although the Report "focuses on Plaintiff's continued employment in rendering its decision[,] . . . courts have found sufficient evidence of severe and pervasive work environments where employees endured similar, or less egregious, harassment over extended periods of time." *Id.* at 4.

The court finds that the Report did not improperly emphasize Jordan's continued employment but rather stated that "this fact is not dispositive," while also explaining that, nonetheless "it indicates the work conditions were not impacted in a way that made the environment severe or pervasive from a race/color-based perspective." ECF No. 34 at 25.

Instead, the Report's primary focus was "on the facts of this case," concluding, after a thorough review of those facts, that "Plaintiff has not satisfied the 'high bar' of showing severe or pervasive conduct that was based on his race that changed his work conditions." *Id.* The magistrate judge further noted, "it is far from clear whether analysis is required given Plaintiff has presented no evidence that he is a member of a protected class or any actual evidence that any of his supervisors or coworkers even thought him to be" Native American. *Id.* at 24.

The court agrees. Here, a de novo review of the records shows that, although Jordan has offered evidence of racist hostility directed towards him, including nooses placed in his work area

3

and in his vehicle, racist drawings on his whiteboard, and repeated name-calling including calling him "Wahoo" and his office the "Reservation," Jordan has offered no evidence that this hostility was motivated by any protected characteristic[1] he possesses. *See, e.g., Waltherr-Willard v. Mariemont City Sch.*, 601 F. App'x 385, 388–89 (6th Cir. 2015) (finding that an employee presented no evidence that her protected characteristics motivated her employer's alleged hostility).

Notably, Jordan does not dispute he is white and appears to concede any claim based on race, arguing instead that

> Plaintiff is a member of a protected class based on his skin color because he is darker than other white persons. "Color discrimination arises when the particular hue of the plaintiff's skin is the cause of the discrimination, such as in the case where a dark-colored African-American individual is discriminated against in favor of a light-colored African-American individual." *Bryant v. Bell Atl. Maryland, Inc.*, 288 F.3d 124, 133(4th Cir. 2002).

ECF No. 37 at 2 n.1.

While Jordan's argument may hold if he provided evidence of color discrimination—such as evidence that the hostile work environment he endured was based on his being a dark-skinned white person—no such evidence exists in the record. Specifically, Jordan has not shown that he was referred to as Native American or that the alleged treatment he received was based on his skin color. Simply put, Jordan has failed to provide evidence demonstrating that the harassment he experienced was rooted in the hue of his skin or based on skin tone.

Instead, Jordan testified that his workplace was permeated with name-calling. *See, e.g.,*

---

[1] As stated, Plaintiff testified he has been "called dark skinned, olive skinned" but also repeatedly testified that he is white. *See, e.g.*, ECF No. 25:6 at 16:2–17:3, 65:10–17. Plaintiff's supervisor testified that he considered Plaintiff a white male that may tan faster than others. *See, e.g.*, ECF No. 19-6 at 27:1–14. There is no other evidence in record concerning the color of Plaintiff's skin or his race.

ECF No. 25-6 at 136:25–26 (Plaintiff testifying he called three coworkers Moe, Larry, and Curly); *id.* at 139:3–16 (Plaintiff testifying he called the same three coworkers "mafia"); *id.* at 147:10–148:18 (Plaintiff testifying he texted, concerning one of the three coworkers, as follows: "I don't trust J, Three Necks. That's his Native American name.").

Jordan also testified that Wahoo McDaniel was his favorite professional wrestler, that he would talk about wrestling and Wahoo McDaniel at work, that he called himself Wahoo, and as follows:

> Q. So, you're the person who came up with the reference to Chief Wahoo, right?
>
> A. The reference to Chief Wahoo was, it was on my board.
>
> Q. Because you used that name. You brought it up in a joking conversation, correct?
>
> A. I don't think that's the way it happened at all at first, no, sir.
>
> Q. You're not denying it, though?
>
> A. I'm not going to deny it. They named it Wahoo's Reservation and wrote it across the top of the board.
>
> Q. You will agree with me that you're kind of making Indian jokes for fun around the workplace, right?
>
> A. Anything as far as lightening the mood, trying not to be techie, I would say that I said jokes.
>
> Q. About Indians?
>
> A. Put peanuts in the desk drawers too, yes, sir . . . .
>
> Q. So, this pow wow, in fact, you used to joke about the pow wow as well, didn't you?
>
> A. I used to joke about it?
>
> Q. Yeah. Didn't you joke about it?

A.     I was asked if I was going to attend.

Q.     You used to joke about it, right?

A.     I don't remember joking about it.

Q.     You're not denying that, are you?

A.     I'm not going to deny it. I just know that it was asked about my people.

Q.     And you joked about that, correct? You also joked about being a Native American, correct?

A.     Due to everything written on—yes, sir, I joked about that.

*Id.* at 251:15–252:7, 283:9–22; *see also id.* 75:1–67, 8:12–19.[2]

Here, although Jordan testified that he was a victim of color discrimination because he was called "Indian" at work, *id.* at 16:17–17:3, he has submitted no evidence supporting this assertion. Instead, the evidence—including testimony from coworkers and supervisors—shows that Plaintiff was referred to as a Native American because of his love for wrestling and Wahoo McDaniel. *See Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 781 (4th Cir. 2023) (holding a plaintiff asserting a hostile work environment claim must show the harassment was "because of" the plaintiff's race or color).

Even viewing the evidence in the light most favorable to Jordan, the record reflects a workplace environment characterized by inappropriate behavior, some of which he participated

---

[2] Jordan's coworkers and supervisors also testified that he was called Wahoo because of Plaintiff's love of wrestling and that he referred to himself as Wahoo. *See, e.g.*, ECF No. 19-6 at 48:1–8; ECF No. 26-5 ¶ 5 ("Mr. Jordan is the person that instigated jokes and comments about him being an Indian or Native American. That all seemed to be tied back to 'Wahoo McDaniel,' who was the professional wrestler that Mr. Jordan seemed to like."). Although there appears to be a dispute over whether Jordan created the name Wahoo for himself or "went along with being called Wahoo," ECF No. 25-6 at 74:10, the court does not find this dispositive where the record is undisputed that Native American references to Plaintiff concerned the Native American wrestler Wahoo McDaniel and where Plaintiff has presented no evidence that the color of his skin was in any way related.

in, including racially-offensive language and actions directed at him.

That said, Jordan, as a white male, has not described a workplace scenario that Title VII was meant to police—discriminatory or harassing conduct aimed at him because of his race or skin color. *Alberti v. Rector & Visitors of the Univ. of Virginia*, 65 F.4th 151, 156 n.4 (4th Cir. 2023) (collecting cases) ("The Supreme Court and this court have consistently held that Title VII should not be interpreted as a 'general civility code for the American workplace.'").

## CONCLUSION

For these reasons, the court adopts the Report, ECF No. 34, and incorporates it herein. Defendant's motions for summary judgment, ECF No. 19, is accordingly GRANTED.

IT IS SO ORDERED.

January 31, 2025
Columbia, South Carolina

Sherri A. Lydon
United States District Judge